UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROL D.,

                    Plaintiff,

v.                                                            6:18-CV-1181 (ATB)

COMM'R OF SOC. SEC.,

                    Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

CONBOY, MCKAY, BACHMAN            LAWRENCE D. HASSELER, ESQ.
& KENDALL, LLP
  Counsel for Plaintiff
307 State Street
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.           PADMA GHATAGE, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge

## **<u>DECISION and ORDER</u>**

Currently before the Court, is this Social Security action filed by Carol D. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g). This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

(Dkt. Nos. 3, 4). The parties have each filed briefs (Dkt. Nos. 10 and 11) addressing the administrative record of the proceedings before the Commissioner. (Dkt. No. 9.)[1]

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1967 (T. 318), making her 45 years old on the alleged onset date and 49 years old on the date of the ALJ's decision. Plaintiff reported obtaining an Associate's degree and previous work as a medical transcriptionist. (T. 321, 331.) At the initial level, Plaintiff alleged disability due to nerve damage in both hands and loss of use in both hands and both arms. (T. 330.) She had carpal tunnel release surgery on her left hand in 2010, and on her right hand on September 10, 2013, which did not relieve her symptoms. (T. 386.)

### B. Procedural History

Plaintiff applied for disability insurance benefits on October 16, 2014, alleging disability beginning September 10, 2013. Plaintiff's application was initially denied on February 10, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at two hearings before ALJ John P. Ramos on February 13, 2017, and August 7, 2017, with a vocational expert also appearing at the second hearing. (T. 44-77.) On September 7, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T. 8-26.) On August 28, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-7.)

---

[1] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

**C.     The ALJ's Decision**

In his decision (T. 11-20), the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (T. 13.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 10, 2013, the alleged onset date. (*Id*.) The ALJ further found that Plaintiff had severe impairments including obesity, bilateral carpal tunnel syndrome, and bilateral knee degenerative joint disease. (*Id*.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 15.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint due to any cause) and 11.14 (peripheral neuropathy). (*Id*.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except

> [she] can sit for up to six hours in an eight hour day at two-hour intervals, stand for up to six hours in an eight hour day at two-hour intervals, and walk for up to six hours in an eight hour day at two-hour intervals. She can continuously reach in all directions, push, and pull with both upper extremities. She can also frequently handle and finger, and continuously feel with both hands and upper extremities. [She] can continuously operate foot controls with either foot. She can occasionally climb ladders or scaffolds, and can frequently climb stairs and ramps. She can also occasionally balance, stoop, kneel, crouch and crawl, as those terms are defined in the Dictionary of Occupational Titles. [She] can continuously work at unprotected heights and with moving mechanical parts, operate a motor vehicle, and be exposed to humidity and wetness; dust odors, fumes and pulmonary irritants, extremes of temperature, and vibrations.

(T. 15.) The ALJ determined, based on testimony provided by a vocational expert, that Plaintiff was unable to perform any past relevant work, but could perform jobs existing in significant

numbers in the national economy. (T. 19-20.) The ALJ therefore concluded that Plaintiff was not disabled. (T. 20.)

### D. Issues in Contention

Plaintiff argues that the RFC determination is not supported by substantial evidence and that the ALJ did not properly weigh the medical opinions. (Dkt. No. 10, at 13-16.) Plaintiff also contends that the ALJ failed to properly evaluate Plaintiff's credibility and subjective complaints of disabling symptoms. (*Id*. at 17-20.) Defendant argues that the ALJ properly evaluated the medical opinions and Plaintiff's symptoms in assessing the RFC and that his findings at Step Five are supported by substantial evidence. (Dkt. No. 11, at 6-14.) The Court concludes that the ALJ erred in assessing the medical evidence relating to Plaintiff's bilateral carpal tunnel syndrome, and that this error tainted his RFC analysis and the ultimate decision that Plaintiff was not disabled. Accordingly, the Court will reverse the Commissioner's decision and remand for further administrative proceedings.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389,

401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an

> impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. DISCUSSION

### A. Substantial Evidence Does Not Supports the ALJ's Analysis of the Opinion Evidence and the RFC Determination

#### 1. Applicable Law

##### a. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### b. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 404.1545. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990)). An ALJ must specify the functions that plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

### c. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

### 2. Relevant Medical Evidence

#### a. Treating Physicians

Thomas Birk, D.O., was Plaintiff's primary care provider for approximately two years. (T. 536-76, 580.) On February 10, 2017, Dr. Birk completed a medical source statement assessing Plaintiff's carpal tunnel syndrome in both hands and wrists and tarsal tunnel syndrome in both feet and ankles. He reported poor response to treatment. (T. 580-87.)[2] Dr. Birk opined that Plaintiff could occasionally and frequently lift and/or carry less than ten pounds, stand and/or walk less than two hours, sit about six hours, do limited pushing and pulling with the upper and lower extremities (due to poor hand strength and pain in the hands and wrists with little manipulation). (T. 581-82.) She could never climb, balance, kneel, crouch, crawl, or stoop because of pain in her hands, wrists, feet, and ankles with little activity. (T. 582.) She was limited to occasional reaching, handling, fingering, and feeling because of poor strength in her hands and a new complaint of right shoulder pain. (T. 583.) Dr. Birk recommended that Plaintiff should have limited exposure to temperature extremes, vibration, humidity/wetness, and hazards because cold, damp weather and little activity aggravated her symptoms. (T. 584.) He noted Plaintiff's "incapacitating" pain and stated that walking, standing and bending greatly increased her pain, causing abandonment of tasks related to daily activities or work. (T. 585.) Dr. Birk also reported that Plaintiff's medications caused some limitations, but would not create serious work problems. (*Id.*) Dr. Birk noted that Plaintiff's limitations were first present on February 23, 2015. (T. 586.)

---

[2] The ALJ stated that Dr. Birk also wrote a note on the same day opining that the Plaintiff was unable to work. (T. 17 (citing Ex. 19F)). The copy of that note in the record (T. 589) is largely illegible, but appears to be a prescription from Dr. Andrew Majak, not Dr. Birk. The Court could not decipher the text of the note.

The ALJ found that the limitations reported by Dr. Birk were not supported by his own clinical findings--including full range of motion and generally normal strength in her right shoulder a few days prior to his assessment--nor were they supported by the normal electrodiagnostic studies of Plaintiff's upper extremities in August 2016. (T. 17-18, 405-19, 438-41, 604.) The ALJ noted other examinations documenting intact sensation and motor function in the upper and lower extremities, as well as normal station and gait. (T. 405-19, 501-05.) The ALJ also found that Dr. Birk's opinions were inconsistent with the assessment of independent medical expert, Dr. Leong, which the ALJ found more persuasive, as discussed further below. (T. 18.)

On October 6, 2016, Plaintiff was evaluated by Jon Loftus, M.D., an orthopedic surgeon. Dr. Loftus found: "despite the normal electrodiagnostic studies I think the patient has bilateral carpal tunnel syndrome. Obviously having the normal electrodiagnostic studies does bring into question the diagnosis but again given the history and physical findings I think the case can be made for a right open carpal tunnel release" and "I would gauge her to have a 35% impairment of her right hand and wrist and 25% impairment of her left hand and wrist due to her current level of complaints." (T. 440.) On February 9, 2017, Dr. Loftus noted that Plaintiff's workers compensation insurer had denied coverage of surgery (see T. 602), but he still highly recommended a right open carpal tunnel release. He stated that Plaintiff was "totally incapacitated" pending surgery (T. 578), and should remain out of work, and assessed a 35% impairment of her right hand and a 30% impairment of her left hand (T. 608).

The ALJ's opinion did not mention Dr. Loftus, but cited his treatment note that referenced the Plaintiff's normal electrodiagnostic studies. (T. 18 (citing Ex. 7F).) The ALJ also observed that the record contained several treatment notes indicating that Plaintiff was unable to

work, with a percentage of disability, again without mentioning Dr. Loftus or citing to his medical records. The ALJ found that these statements were of limited value and gave them minimal weight because they were not functionally specific and addressed issues reserved to the Commissioner. (T. 18.)

### b. Consultative Opinions

In December 2014, Plaintiff underwent an independent medical examination conducted by Gerald Coniglio, M.D., as part of a Workers Compensation claim. (T. 385-98.) Dr. Coniglio noted in his report that Plaintiff's injury date was January 15, 2010, that an original surgical procedure for Plaintiff's left carpal tunnel syndrome did not help, and she continued to experience symptoms of numbness, tingling, and burning. (T. 386.) Dr. Coniglio reviewed a January 2010 MRI of Plaintiff's left wrist, showing thickening and decreased T2 signal in the median nerve with some mild increased signal about the flexor tendons, consisting of median nerve neuritis and carpal tunnel syndrome. He also cited EMGs supporting the diagnosis of bilateral median neuropathy at the wrist. (*Id.*) Dr. Coniglio noted that a second carpal tunnel release, on the right wrist, was performed in September 2013, but did not help, leaving the Plaintiff with similar issues in both hands, wrists, and forearms. (*Id.*) The then-current plan of treatment was possibly more surgery, but Plaintiff's doctor had not been able to confirm her diagnosis, and Plaintiff was not working because she had been laid off from her job. (*Id.*)

Dr. Coniglio assessed bilateral radial nerve entrapment and bilateral carpal tunnel syndrome, with maximum medical improvement not having been reached. (T. 391.) He opined that Plaintiff could lift two pounds with either arm occasionally; push, pull, turn, and twist with a force of two pounds occasionally; could not type or climb ladders; but could do fine and gross manipulation occasionally. (*Id.*) The ALJ gave Dr. Coniglio's opinion minimal weight because

11

it did not address all of Plaintiff's medically determinable impairments and because the limitations identified were temporary, as she had not attained maximum medical improvement at that time. (T. 18.)

In March 2017, the ALJ consulted medical expert Dorothy Leong, M.D., via interrogatory. (T. 631-44.) Dr. Leong opined that Plaintiff could frequently lift and carry up to ten pounds and occasionally lift and carry up to 20 pounds, and could sit, stand, and walk for two hours at a time, for a total of six hours each during a workday. (T. 631-32, 643.) Plaintiff could frequently handle and finger bilaterally, but there were no other limitations to the upper extremities. (T. 633, 643.) She could continuously use both feet for operation of foot controls and had no limitations with regard to her feet. (*Id.*) Plaintiff could continuously balance and stoop, frequently climb stairs and ramps, occasionally climb ladders or scaffolds, and occasionally kneel, crouch and crawl. (T. 634, 643.) She could continuously work at unprotected heights and around moving mechanical parts, continuously operate a motor vehicle, and continuously tolerate humidity/wetness, pulmonary irritants, and extreme temperatures. (T. 635, 643.) Dr. Leong's assessment did not note specific impairments, but concluded that Plaintiff did not meet or medically equal a listed impairment. (T. 638-39.)

The ALJ afforded significant weight to Dr. Leong's opinion "because it was based on her medical expertise, knowledge of Social Security Act and Regulations requirements, and a thorough review of all but a few of the claimant's medical records." (T. 17.) The ALJ also found that the objective evidence received after this assessment did not support greater limitations. (*Id.*)

### 3. Analysis

Plaintiff argues that the ALJ discounted Dr. Birk's treating source opinion by cherry-picking evidence from a single medical procedure indicating normal electrodiagnostic findings. (Dkt. No. 10, at 15-16; T. 17-18, 604.) Plaintiff further contends that Dr. Birk's opinion is supported by the statement of orthopedic surgeon, Jon Loftus, M.D., on October 6, 2016 that, despite the normal electrodiagnostic studies, Plaintiff suffered from bilateral carpal tunnel surgery that significantly impaired both of her hands and wrists, and required surgery. (*Id*. at 15-16; T. 440.)

The Court is troubled by the ALJ's lack of explicit discussion of significant opinion and other medical evidence regarding Plaintiff's bilateral carpal tunnel syndrome, despite finding it to be a severe impairment. (T. 13-19.) The ALJ did include some modest limitations in the RFC related to this impairment, including continuous reaching in all directions, continuous pushing and pulling with both upper extremities, frequent handling and fingering, and continuously feeling with both hands and upper extremities. (T. 15.) The ALJ also summarized Plaintiff's testimony about, inter alia, her limitations in lifting; how reaching causes pain; her experience of numbness, tingling and swelling in her hands; her difficulty gripping and handling objects; her occasional need for help with dressing; and how she wears hand braces at night. (T. 16, 71-73, 76.) Further, the ALJ discussed the opinions from Dr. Birk and Dr. Coniglio, affording both of them minimal weight. (T. 17-18.)

However, the Court is not convinced the ALJ properly considered the treatment notes and assessments of orthopedic surgeon, Jon Loftus, M.D. (T. 440, 578, 608.) In discounting Dr. Birk's treating source opinion, the ALJ emphasized that electrodiagnostic studies of Plaintiff's upper extremities from August 2016 were normal. (T. 18, 405-19, 438-41.) However, on

13

October 6, 2016, Dr. Loftus opined that Plaintiff had bilateral carpal tunnel syndrome despite normal electrodiagnostic studies. (T. 440.) He recommended a right open carpal tunnel release and estimated a 35 percent impairment of Plaintiff's right hand and wrist and 25 percent impairment of her left hand and wrist. (T. 440.) On February 9, 2017, Dr. Loftus observed that Plaintiff presented with "classic bilateral carpal tunnel syndrome despite negative electrodiagnostic studies." (T. 608.) He considered her to fit the category of "false negative studies" and highly recommended a right open carpal tunnel release with the indication that Plaintiff would remain out of work and had 35 percent impairment of her right hand and 30 percent impairment of her left hand at that time. (*Id.*)

The ALJ, in the first instance, must properly analyze the reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. In this case, the ALJ did not explicitly discuss the assessments by Dr. Loftus in his decision or analysis of Dr. Birk's treating source opinion, other than discounting "statements in the record" regarding the Plaintiff's ability to work and percentage of disability. (T. 18.) The Court does not find the ALJ's analysis sufficient, given that Plaintiff's disability claim rests heavily on her alleged nerve damage in both hands and loss of use of both hands and arms. (T. 79.) The Court notes the ALJ also did not explicitly discuss the assessment of Dr. Coniglio regarding bilateral radial nerve entrapment and bilateral carpal tunnel syndrome or address its consistency with Dr. Birk's treating source opinion relating to significant limitations with the upper extremities. (T. 18, 391.) The Court concludes that the ALJ did not properly analyze the medical evidence relating to Plaintiff's bilateral carpal tunnel syndrome.

The Court acknowledges that the ALJ relied on the opinion of Dr. Leong (a physiatrist), noting that she had reviewed almost the entire medical record. (T. 17, 18.) Dr. Leong's

interrogatory responses indicate that she reviewed the treatment notes of Dr. Loftus (an orthopedic surgeon). Dr. Leong nevertheless opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and frequently handle and finger bilaterally, albeit without analyzing or distinguishing Dr. Loftus's findings. (T. 642-43.) The Court is not satisfied that Dr. Birk's treating source opinion was properly rejected by the ALJ in light of Dr. Loftus' assessment that Plaintiff suffered from classic bilateral carpal tunnel syndrome despite negative electrodiagnostic studies. (T. 608.) The Court therefore finds that substantial evidence does not support the ALJ's analysis of Dr. Birk's treating source opinion, the ALJ's failure to explicitly discuss Dr. Loftus' assessments, or the resulting RFC determination.

Failure to consider or assign specific weight to an opinion may be considered harmless error where consideration would not have changed the outcome. *See, e.g., Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, 14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *16 (denying the request for remand because application of the correct legal standard would not change the outcome); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose). However, the Court concludes that the flaws in the ALJ's analysis of the medical evidence regarding Plaintiff's bilateral carpal tunnel syndrome could have affected the ultimate determination that she was not disabled. The Court cannot determine how the ALJ would have explicitly weighed Dr. Loftus' assessments or how he would have analyzed Dr. Birk's opinion in light of Dr. Loftus' treatment notes. The ALJ emphasized that

Dr. Leung was a "specialist" (T. 17, 18), evaluating an orthopedic/neurological issue,[3] while Dr. Loftus, who the ALJ did not mention, was an orthopedic surgeon specializing in hand surgery (T. 602). While Dr. Loftus apparently only examined Plaintiff on two occasions, Dr. Leong did not see the Plaintiff at all.[4]

The modest limitations that the ALJ found with respect to Plaintiff's ability to use her hands, and the fact that the ALJ discounted Dr. Birk's treating opinion that Plaintiff had more substantial limitations (in lifting and carrying, pushing and pulling with the upper extremities as well as occasional reaching, handling, fingering and feeling), were based, at least in part, on normal electrodiagnostic studies on one occasion. The Court finds the ALJ's failure to adequately account for Dr. Loftus' assessments of Plaintiff's bilateral carpal tunnel syndrome notwithstanding those normal studies, to be reversible error requiring remand for proper consideration of the medical evidence and opinions.

---

[3] Dr. Leong's resume state that she is board eligible for Physical Medicine and Rehabilitation. (T. 629.)

[4] "The regulations specify that an ongoing treatment relationship is generally found where an acceptable medical source treats a claimant 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s).' Thus, an acceptable medical source who has treated or evaluated a claimant only a few times, or only after long intervals, may still be considered a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition(s).' 20 C.F.R. § 404.1502." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 269 (N.D.N.Y. 2009) (citations omitted). Because Dr. Loftus apparently only evaluated Plaintiff twice, because her surgery was not approved by the workers compensation insurer, his opinions may not be "entitled to the extra weight of that of a "treating physician." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983); *Rockwood v. Astrue*, 614 F. Supp. 2d at 269-70. However, Dr. Loftus, unlike Dr. Leong, did examine and evaluate the Plaintiff. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("'[g]enerally, the longer a treating source has treated [the claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion'" (quoting 20 C.F.R. § 404.1527(d)(2)(i))).

### B. The ALJ's Evaluation of Plaintiff's Symptoms

The ALJ's error in his analysis of the medical and opinion evidence tainted his RFC analysis, his evaluation of Plaintiff's symptoms, and his ultimate determination with respect to disability. On remand, the ALJ should conduct a new analysis pertaining to Plaintiff's RFC and symptoms.

**WHEREFORE**, based on the findings in the above Decision and Order, it is hereby

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper analysis of the medical opinion evidence and other further proceedings, consistent with this Decision and Order.

Dated: February 18, 2020

Andrew T. Baxter
U.S. Magistrate Judge